# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARNEL DYSON, | 1:10-cv-00382-DLB (HC) |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DIRECTING CLERK OF COURT TO ENTER JUDGMENT IN FAVOR OF RESPONDENT |
| v. | |
| HECTOR A. RIOS, | [Doc. 1] |
| Respondent. | |

Petitioner is a federal prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge. Local Rule 305(b).

## BACKGROUND

Petitioner is currently in the custody of the United States Penitentiary ("USP") in Atwater, California, following his conviction in the Washington DC Superior Court for first degree sexual abuse and abuse while armed. Ex. 1, to Answer. Petitioner entered the custody of the Bureau of Prisons ("BOP") on May 7, 2002. Petitioner was transferred to USP Atwater as a "Greater Security Transfer" from the medium-security Federal Correctional Institution at Butner, NC (FCI Butner), after involvement in a gang-related physical altercation between inmates. Ex. 3, to Answer, at 12.

Petitioner filed the instant petition for writ of habeas corpus on March 4, 2010. Petitioner challenges a pending placement in a Special Management Unit ("SMU") and a disciplinary

hearing which led, in part, to his referral to a SMU.  On July 12, 2009, Petitioner received an Incident Report, #1891641, for violation of code 104-Possession of a Dangerous Weapon and code 201-Fighting with Another Person.  Ex. 3, to Answer, at 29.

Respondent filed an answer to the petition on June 10, 2010.  Petitioner did not file a traverse.

## DISCUSSION

I.  <u>Subject Matter Jurisdiction and Venue</u>

Writ of habeas corpus relief extends to a person in custody under the authority of the United States.  <u>See</u> 28 U.S.C. § 2241. Writ of habeas corpus relief is available if a federal prisoner can show he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).  Whether the Court has subject matter to hear Petitioner's claims pursuant to 28 U.S.C. § 2241 will be discussed below. Petitioner is currently in custody at the USP in Atwater, California. <u>Hernandez v. Campbell</u>, 204 F.3d 861, 864 (9th Cir.2000). "'[J]urisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petition and the accompanying custodial change.'" <u>Francis v. Rison</u>, 894 F.2d 353, 354 (9th Cir. 1990), quoting <u>Santillanes v. United States Parole Comm'n</u>, 754 F.2d 887, 888 (10th Cir. 1985); <u>accord</u> <u>Smith v. Campbell</u>, 450 F.2d 829, 834 (9th Cir. 1971).

II.  <u>Exhaustion of Administrative Remedies</u>

Before filing a petition for writ of habeas corpus, a federal prisoner challenging any circumstance of imprisonment must first exhaust all administrative remedies.  <u>Martinez v. Roberts</u>, 804 F.2d 570, 571 (9th Cir. 1986); <u>Chua Han Mow v. United States</u>, 730 F.2d 1308, 1313 (9th Cir. 1984); <u>Ruviwat v. Smith</u>, 701 F.2d 844, 845 (9th Cir. 1983).  The requirement that federal prisoners exhaust administrative remedies before filing a habeas corpus petition was judicially created; it is not a statutory requirement.  <u>Brown v. Rison</u>, 895 F.2d 533, 535 (9th Cir. 1990).  Thus, "because exhaustion is not required by statute, it is not jurisdictional." <u>Id</u>.  If Petitioner has not properly exhausted his claims, the district court, in its discretion, may either "excuse the faulty exhaustion and reach the merits or require the petitioner to exhaust his administrative remedies before proceeding in court."

If the petitioner did not properly exhaust his administrative remedies, and such remedies are no longer available, he may have procedurally defaulted on his claims. See Francis v. Rison, 894 F.2d 353, 354-55 (9th Cir.1990) (applying procedural default rules to administrative appeals); see generally Murray v. Carrier, 477 U.S. 478, 485 (1986); Wainwright v. Sykes, 433 U.S. 72, 86-87 (1977); Tacho v. Martinez, 862 F.2d 1376, 1378 (9th Cir.1988). If a claim is procedurally defaulted, the court may require the petitioner to demonstrate cause for the procedural default and actual prejudice from the alleged constitutional violation. See Francis, 894 F.2d at 355 (suggesting that the cause and prejudice test is the appropriate test); Murray, 477 U.S. at 492 (cause and prejudice test applied to procedural defaults on appeal); Hughes v. Idaho State Bd. of Corr., 800 F.2d 905, 906-08 (9th Cir.1986) (cause and prejudice test applied to pro se litigants).

The Bureau of Prisons has established an administrative remedy procedure governing prisoner complaints. The procedure is set forth at 28 C.F.R. § 542.10 et. seq. First, an inmate must attempt to resolve the issue informally by presenting it to staff before submitting a Request for Administrative Remedy. 28 C.F.R. § 542.13 (1999). If dissatisfied with the response, the prisoner may proceed with the formal filing of an Administrative Remedy Request. 28 C.F.R. § 542.14 (1999). Upon denial by the institution, the prisoner may appeal the decision by filing a complaint with the Regional Director of the BOP. 28 C.F.R. § 542.15 (1999). The Regional Director's decision may be appealed to the General Counsel in Washington, D.C. Id. Appeal to the General Counsel is the final step in the administrative remedy process. Id.

Respondent argues that Petitioner failed to exhaust the available administrative remedies. In support of his argument, Respondent submits a declaration by Administrative Remedy Clerk, Cecilia Burks, who declares that as of May 20, 2010, Petitioner has filed seven administrative remedies with BOP personnel. See Ex. 2, to Answer, Burks Declaration at ¶ 4. However, none of the appeals challenged the selection or placement in a SMU.

Petitioner filed two administrative appeals in 578392-F1 and 578392-R1 challenging the disciplinary hearing regarding a July 11, 2009 fight at USP Atwater. Appeal 578392-F1 was filed at the institution level on February 25, 2010, and appeal 578392-R1was filed at the regional level on March 25, 2010. Petitioner did not file any challenge regarding the July 11, 2009, disciplinary

3

hearing to the Central Office level.  Therefore, Petitioner has not exhausted the administrative remedies with respect to the claims raised in the instant petition.  Notwithstanding the lack of exhaustion, for the reasons explained below, the claims fail on the merits.

IV.     Applicable Law

Prisoners cannot be entirely deprived of their constitutional rights, but their rights may be diminished by the needs and objectives of the institutional environment.  Wolff v. McDonnell, 418 U.S. 539, 555 (1974).  Prison disciplinary proceedings are not part of a criminal prosecution, so a prisoner is not afforded the full panoply of rights in such proceedings.  Id. at 556.  Thus, a prisoner's due process rights are moderated by the "legitimate institutional needs" of a prison. Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989), *citing* Superintendent, etc. v. Hill, 472 U.S. 445, 454-455 (1984).

However, when a prison disciplinary proceeding may result in the loss of good time credits, due process requires that the prisoner receive: (1) advance written notice of at least 24 hours of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.  Hill, 472 U.S. at 454; Wolff, 418 U.S. at 563-567.  In addition, due process requires that the decision be supported by "some evidence."  Hill, 472 U.S. at 455, *citing* United States ex rel. Vatauer v. Commissioner of Immigration, 273 U.S. 103, 106 (1927).  The "some evidence" standard is "minimally stringent," and a decision must be upheld if there is any reliable evidence in the record that could support the conclusion reached by the fact finder.  Hill, 472 U.S. at 455-456; see also Barnsworth v. Gunderson, 179 F.3d 771, 779 (9th Cir. 1990); Zimmerlee v. Keeney, 831 F.2d 183, 186 (9th Cir. 1987).  Determining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence.  Hill, 472 U.S. at 455; Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986).

///

///

4

V.     Analysis of Petition

    A.     Challenge to Pending Placement in SMU

On October 30, 2009, a Request for Transfer, "V-Greater Security", was prepared for Petitioner, requesting a transfer to the SMU at USP Lewisberg, due to his poor institutional adjustment and lengthy disciplinary history.[1] The Regional Director ("RD") ordered a hearing to consider the SMU transfer and a certified DHO was appointed.  On November 30, 2009, Petitioner received a pre-hearing notice.  The hearing was conducted pursuant to Program Statement 5217.01, 3(b)(2) on December 9, 2009.  The hearing officer determined that Petitioner met the criteria for placement into a SMU.  The RD reviewed the findings and recommended that Petitioner be designated to a SMU by the Designation and Sentence Computation Center (DSCC). See Ex. 3, to Answer, Special Management Unit Hearing package.

On December 23, 2009, the DSCC approved the transfer to a SMU when bed space is available.  On May 17, 2010, Petitioner was approved for transfer to the SMU at USP Florence, Florence, CO.  Ex. 6, to Answer, Clearance Data.  As of June 10, 2010-the date Respondent filed the answer, Petitioner is pending transfer.

Any challenge to Petitioner's pending placement in the SMU is not cognizable under section 2241 because it does not challenge the fact or duration of his confinement but rather challenges the conditions of his confinement, and such claim must be dismissed. Should Petitioner wish to pursue this claim he may do so by way of a civil rights complaint pursuant to Bivens v. Six Unknown Agents, 403 U.S. 388 (1971).

---

[1] During his incarceration, Petitioner suffered multiple rules violations, including the following: June 25, 2002, being in an unauthorized area (code 316); September 15, 2002, being in an unauthorized area (code 316); November 5, 2002, engaging in a group demonstration (code 212); January 21, 2003, phone abuse, non-criminal (code 497); March 20, 2003, being absent from assignment (code 310); June 24, 2003, being in an unauthorized area (code 316); June 27, 2003, lying or falsifying a statement (code 313); July 23, 2003, lying of falsifying a statement (code 313); July 23, 2003, refusing a work or program assignment (code 306); September 1, 2003, phone abuse, non-criminal (code 397); October 15, 2003, destroying property over $100 (code 218); March 9, 2005, possessing an unauthorized item (code 305); July 13, 2005, possessing an unauthorized item (code 305); October 17, 2006, assaulting with serious injury (code 101A); November 29, 2006, assaulting without serious injury-throwing liquid on staff (code 224); October 1, 2007, assaulting without serious injury (code 224); April 28, 2008, possessing intoxicants (code 222); July 15, 2008, possessing a dangerous weapon (code 104); January 16, 2009, attempted stealing-mailing fraudulent check to Lockbox (code 219A); and July 10, 2009, being unsanitary or untidy (code 330).

B.   <u>Disciplinary Violation</u>

On July 12, 2009, Petitioner received written notice of the rules violation.  Ex. 3, to Answer.  On July 20, 2009, Petitioner appeared before the Unit Discipline Committee ("UDC") and he was referred to the Disciplinary Hearing Officer ("DHO") for further proceedings.[2] Petitioner was then informed of his rights before the DHO, and provided an opportunity to request witnesses and request a staff representative.  He did not request either.  He was further advised of all his rights related to the DHO hearing, including the right to present documentary evidence. <u>See</u> Ex. 5, to Answer, <u>Inmate Rights to Discipline Hearing and Notice of Discipline Hearing</u>.

A hearing was held on September 30, 2009, by an impartial officer who was not involved in the incident in any way.  At this hearing, Petitioner was again notified of his constitutional right to have staff assistance and to present witnesses and documentary evidence, which were all waived.  After the finding of guilt, Petitioner received a written statement of the evidence relied upon and reasons for the sanctions.[3]  Thus, it is clear that Petitioner was afforded all of the procedural protections guaranteed by <u>Wolff</u>.

In addition, there is some evidence to support the finding of guilt.  Petitioner was found guilty of possession of a weapon (Code 104) and fighting with another person (Code 201).  28 C.F.R. § 541.13 and Tables 3-6.  Petitioner was assessed a forfeiture of forty days good conduct time for the code 104 violation and twenty-seven days of good conduct time for the code 201 violation.  DHO Tyson considered the incident report which stated:

> On 7-11-09 at approximately 8:20pm, I observed inmate Dyson, Darnell, Reg. No. 04696-007 and inmate Bly, Eric, Reg. No. 13334-064, in a verbal altercation in unit 1A.  I ordered inmate Bly to back away from inmate Dyson, but he refused.  Inmate Bly and Dyson then began to strike each other in the face and upper torso area with closed fists.  Seeing what was going on, inmate Jordan, Harlon Reg. No. 41442-048, joined inmate Bly and began to strike inmate Dyson.  Inmate Dyson

---

[2] The UDC is made of one or more staff members who are delegated "the authority and duty to hold an initial hearing upon completion of the investigation concerning alleged charge(s) of inmate misconduct.  The Warden shall authorize these staff members to impose minor sanctions (G through P) for violation of prohibited act(s)."  28 C.F.R. § 541.12(b).  The UDC considers all evidence presented at the hearing and makes the determination if the greater weight of the evidence warrants referral for further disciplinary proceedings.  28 C.F.R. § 541.15.

[3] Although the report noted that a copy was delivered to Petitioner on September 30, 2009, on March 17, 2010, staff were unable to verify that Petitioner actually received a copy of the report on that date, and Petitioner was therefore allowed to file an administrative appeal from the later date.  Ex. 7, to Answer.

6

then produced a cylindrical metal object, sharpened at one end, from his waste band and attempted to strike inmate Bly and inmate Jordan with it. All three inmates continued to fight until responding staff separated all inmates involved. At this time inmate Dyson was found to be in possession of a 6 ½ inch sharpened metal weapon. Inmate Bly was found to be in possession of a 8 inch sharpened metal weapon.

Petitioner denied possessing the knife. DHO Tyson reviewed photographs taken of all three inmates which showed several puncture and lacerations marks on the inmates which corroborates the officers' observations of the assault. The DHO also considered the memorandums of the three responding officers who all described the assault consistent with the incident report. Accordingly, there is some evidence to support that Petitioner is guilty of possessing a weapon and fighting with another person. Petitioner requests that this Court review an institutional surveillance tape to determine whether he was acting in self defense; however, this Court is barred from reviewing such evidence. As previously stated, this Court cannot re-examine the entire record, assess the credibility of the witnesses, or weigh the evidence. This Court's review is limited to whether there was "some evidence" to support the DHO's finding. Moreover, there is no evidence the DHO was requested to review the video or that the DHO relied on it in reaching his conclusion. Accordingly, there is no merit to Petitioner's claim and it must be denied.

## ORDER

Based on the foregoing, it is HEREBY ORDERED that:

1.  The instant petition for writ of habeas corpus is DENIED; and

2.  The Clerk of Court be directed to enter judgment in favor of Respondent.

IT IS SO ORDERED.

Dated:   **September 1, 2010**                        **/s/ Dennis L. Beck**
                                                                          UNITED STATES MAGISTRATE JUDGE